**Arnold T. FORSETH, Gerald R. Formsma and Constance Y. Formsma, Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 86–1209.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1987.

Decided May 6, 1988.

Edward G. Lavery, Hercules & Lavery, Dallas, Tex., for petitioners-appellants.

Kenneth L. Greene, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before CUDAHY and MANION, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

This is a somewhat complicated case involving the tax treatment of losses allegedly incurred by taxpayers as a result of their investment in a commodity straddle tax shelter. Although here we are dealing with only three appellants (Mr. and Mrs. Formsma and Mr. Forseth), the case was originally a consolidated trial at the tax court level involving several different persons similarly situated. The five other parties involved in the tax case have already appealed the tax court's adverse decision to the Fifth, Sixth, Ninth, and Eleventh Circuits. In each of these appeals, the decision of the tax court has been affirmed. *Bramblett v. Commissioner,* 810 F.2d 197 (5th Cir.1987) (unpublished opinion); *Mahoney v. Commissioner,* 808 F.2d 1219 (6th Cir.1987); *Enrici v. Commissioner,* 813 F.2d 293 (9th Cir.1987); *Wooldridge v. Commissioner,* 800 F.2d 266 (11th Cir. 1986). Moreover, in each of these cases, the other appellants (who were represented by the same counsel as the instant appellants) raised issues identical to the issues appellants are now raising here. Thus, it appears we have a serious case of multiple forum shopping.

The particular facts of the case are detailed in the lengthy published opinion below. *Forseth v. Commissioner,* 85 T.C. 127 (1985). Essentially, the tax court held that the purported commodities trades giving rise to the "losses" allegedly incurred by appellants were shams and accordingly that such losses were not deductible. In concluding that the entire tax straddle arrangement was an artifice, the tax court

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, sitting by designation.

found that Interact (an advisory firm providing informational services as to how to contact broker-traders who deal in foreign markets), LMEI (a commodity firm), and LMEC (LMEI's successor) took advisory fees and alleged "margin deposits" from appellants; entered into forward contracts for gold or platinum with appellants on an unregulated foreign market for which there were no published prices (and without laying off the contracts with any real third-party brokers); created fictitious losses for appellants by closing out "losing" positions at prices and terms set by LMEI/LMEC to generate a theoretical tax loss that largely offset the type and amount of income the taxpayers needed to shelter; and then closed out the winning position in a subsequent year at a price set by LMEI/LMEC to generate losses that uniformly equaled the amount of margin deposits, which were in reality fees for delivering the artificial tax "losses." Thus, the tax court concluded that the straddle transactions were shams lacking economic substance because the appellants had really just paid a fee to buy fictitiously generated tax losses. Accordingly, the tax court disallowed the deductibility of the tax losses.

### Discussion

In the instant case, taxpayers, Mr. Forseth and Mr. and Mrs. Formsma, appeal the tax court's decision as to the deductibility of the tax losses sustained by them. To be deductible under the Code a transaction must be "entered into for profit." I.R.C. § 165(c). As the Sixth Circuit has noted, although this phrase is "a term of art that has not been interpreted the same by all courts, it is clear that the transaction cannot be a complete sham. If it is a sham, then such niceties as whether it was 'primarily' for profit, or whether the test is an objective or subjective one are simply not involved. Regardless of the definition, the transaction must be bona fide." *Mahoney v. Commissioner*, 808 F.2d 1219, 1220 (6th Cir.1987).

Here, because the tax court determined that the commodities straddle transactions were a sham, it never reached the "entered for profit" issue. The tax court's finding that the forward contracts were shams, is reviewable under the "clearly erroneous" standard because it is "essentially a factual determination." *Thompson v. Commissioner*, 631 F.2d 642, 646 (9th Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 1972 (1981). *See also Enrici*, *supra*, 813 F.2d at 295.

In finding that the alleged gold and platinum straddles were no more than preconceived shams, the tax court relied on the following six factors:

1. The remarkable correlation of the tax needs of each taxpayer and the nature and the amount of tax losses delivered by LMEC/LMEI and Interact. Tax losses were correlated to tax needs in two ways: first, the taxpayer generally suffered losses equal to the amount of income each taxpayer needed to shelter; and second, the type of loss created matched the type of income that needed to be sheltered.

2. Interact's "extraordinary" ability to predict the amount of losses that would be incurred depending upon the margins posted.

3. The willingness of LMEI/LMEC to commence trading in clients' accounts before receipt of the required margin deposits with the result that they were not protected against client default. Had actual bona fide trades been carried out on behalf of appellants, at least some appellants would have been required to post additional margin deposits to cover trading losses.

4. The margin balances in the accounts were "zeroed out" by closing out the clients' gains at prices that made the taxpayers' overall losses equal the margin deposits the appellants initially placed with LMEI/LMEC.

5. Opposite positions were never actually entered into with market making brokers to "lay off" trades.

6. The apparent manipulation of certain trading records by LMEI/LMEC.

*Forseth v. Commissioner*, 85 T.C. 127, 149–166 (1985).

To demonstrate that the trades were not shams, appellants primarily argue that many of these grounds would also have existed even if they had entered into straddles on the open commodities market, and that the losses suffered in their forward straddles were in fact correlated to the losses and gains they would have suffered in the American commodities market. Each court of appeals that has reviewed the tax court's opinion has rejected this argument, however. For example, in *Enrici, supra,* 813 F.2d at 296, the Ninth Circuit stated that

> even if these factual assertions are accepted as true, the Tax Court was entitled to infer from both the precision of the tax advantages obtained and the undocumented nature of the transactions that the parties were merely rigging paper prices, losses, and gains to effectuate a sale of generated tax losses. The fact that Congress may have permitted similar tax advantages to be obtained from real commodities straddles does not make the losses from these sham transactions deductible.

 Thus, the tax court's finding that the entire tax straddle arrangement was an artifice, the essence of which was the sale of bogus tax losses to appellants for a fee, does not appear to be clearly erroneous; rather the finding appears to be right on the mark. As this circuit stated in *Saviano v. Commissioner,* 765 F.2d 643, 654 (7th Cir.1985), "[t]he freedom to arrange one's affairs to minimize taxes does not include the right to engage in financial fantasies with the expectation that the Internal Revenue Service will play along. The Commissioner and the courts are empowered, and in fact duty-bound, to look beyond the contrived forms of the transactions to their economic substance and to apply the tax laws accordingly." [1]

 In addition to the above, one more item needs to be addressed: whether the tax court correctly found that appellants were liable for a negligence penalty under I.R.C. § 6653(a). Section 6653(a) imposes an addition to tax when any part of an underpayment of income tax is due to negligence or intentional disregard of the rules and regulations. Negligence, for the purpose of § 6653(a), is defined as a lack of due care or failure to do what a reasonable and ordinary prudent person would do under the circumstances. *Marcello v. Commissioner,* 380 F.2d 499, 506 (5th Cir.1967). The determination of the Commissioner is presumptively correct. *See Beatty v. Commissioner,* 676 F.2d 150, 152 (5th Cir.1982). The taxpayer has the burden of showing that he was not negligent, and the tax court's determination that a taxpayer is liable for a negligence penalty under § 6653 is subject to the clearly erroneous rule. *See Enrici, supra,* 813 F.2d at 296; *Patterson v. Commissioner,* 740 F.2d 927, 930 (11th Cir.1984).

 Here, the tax court's determination that appellants did not meet their burden does not appear to be clearly erroneous in light of the fact that in reporting their "losses" they gave as little information as possible on their tax returns. For example, Forseth reported his loss as "Platinum Contract Cancelled" and the Formsmas reported their loss only as "Contract Cancelled." Moreover, none of the taxpayers checked the "yes" box in response to the question on the Schedule B's filed with their 1980 returns that asked if they had any interest in a foreign account. At the very least, even if Mr. and Mrs. Formsma and Mr. Forseth were not knowing participants in the scheme, they obviously paid little or no attention to the rather suspect workings of LMEI/LMEC, and thus can be said to have acted without due care. The

---

1. The Formsmas, in addition to arguing that the forward contracts were not shams, contend that the tax court erred in finding that the $2,000 advisory fee paid to Interact in 1980 was nondeductible. Specifically, the Formsmas argue that such fee is deductible under I.R.C. § 212 because it falls under the category of "tax advice."

But if the forward contracts were shams, then the fee could not have been spent for production of income, nor for informational services concerning bona fide investments, nor for tax advice. Thus, we also affirm the tax court's finding on the disallowance of the fee.

tax court must therefore be affirmed on this ground as well.

### Conclusion

For the reasons set forth above, like the Fifth, Sixth, Ninth, and Eleventh Circuits in the related cases, the decision of the tax court is

AFFIRMED.