Gerald LEUHSLER, Beverly Leuhsler, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 91–1861.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1992.

Decided May 11, 1992.

John David Wheeler (argued and briefed), Cleveland, Ohio, for petitioners-appellants.

Gerald Leuhsler, pro se.

Beverly Leuhsler, pro se.

Abraham N.M. Shashy, Jr., Chief Counsel, I.R.S., Gary R. Allen, Acting Chief (briefed), Richard Farber, Robert W. Metzler (argued), U.S. Dept. of Justice, Appellate Section Tax Div., Washington, D.C., for respondent-appellee.

Before: GUY and RYAN, Circuit Judges; and JOINER, Senior District Judge.*

RYAN, Circuit Judge.

Gerald and Beverly Leuhsler appeal a decision of the Tax Court upholding the Commissioner of Internal Revenue's imposition of negligence and valuation overstatement penalties.[1] 26 U.S.C. §§ 6653, 6659. We affirm.

## I.

Gerald Leuhsler holds a bachelor of science degree in accounting and is employed as a certified public accountant at Forest City Enterprises, a real estate development company in Cleveland, Ohio. In late 1981, Leuhsler and several coworkers at Forest City Enterprises and friends were presented with an investment opportunity promising tax savings that were at least twice the amount of their respective investments. It appeared to be a deal too good to be true, and, predictably, it was.

The investment involved "master recording leases" marketed to interested investors as tax shelters by Structured Shelters, Inc. Master recordings are original recordings of performances on audio tape used to produce disc records for mass distribution. Tom Graham, a sales agent for Structured Shelters, presented a tax shelter program involving the leases to James Prohaska, an accountant and vice president of finance for a subsidiary to Forest City Enterprises. At all relevant times, Prohaska was Leuhsler's direct supervisor. Leuhsler learned of the tax shelter program through Prohaska, Graham, and Timothy Powers, another accountant and coworker.

Leuhsler and fourteen other coworkers and friends formed a partnership, CC Associates, to invest in several master recording leases offered by Structured Shelters, including, among others, "The Merry Men of Robin Hood," "The Musical Story of Kum Ba Ya," and "The Playhouse Presentation of the Story of George Washington." Investing as the Leuhsler Investment Co. and acting through the CC Associates partnership, Leuhsler contributed approximately $9,000 to the partnership, $4,500 in cash and a $4,500 promissory note. CC Associates, in turn, paid Structured Shelters $46,312 in cash in December 1981 and executed a $46,312 note due in June 1982. The partnership received the right to claim the master recordings as its property for purposes of the investment tax credit and asserted the value of leases to be $1,852,500. Based on his partnership interest, Leuhsler claimed investment property valued at $180,063 and an investment tax credit of

---

\* Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Beverly Leuhsler's only apparent involvement in this case stems from a joint return filed with her husband for the 1978 tax year and the assessment of penalties for that year. Gerald Leuhsler applied for an investment tax credit on his 1981 tax return and for refunds for the years 1978 through 1981. When the IRS disallowed the claimed credit, tax deficiencies were created for each of those years. Because the deficiencies were caused solely by the actions of Gerald Leuhsler, we shall refer to him individually throughout this opinion.

$18,006. He claimed $5,733 of the credit on his 1981 return and, carrying back the remainder, requested refunds for the years 1978, 1979, and 1980.

Prior to signing on to the deal, the potential investors were apparently provided appraisals of the various master recordings, prepared by Ken Lauber Co. The appraisals were dated July 1, 1982, however, approximately seven months after Leuhsler and the others decided to invest in the master recording leases. Moreover, the appraiser had not physically inspected the master recordings at issue. He appraised their fair market value at $250,000, "based upon the distribution skills of the purchaser, the record's promotion, advertising and sales thereof" and "based upon certain representations made to me by [Structured Shelters] as set forth herein...." The appraisal was explicitly qualified by a warning that it "may be relied upon only to the extent that those representations are accurate and true."

Structured Shelters represented that the master recordings were high quality, would be manufactured by companies held in high regard in the record industry, and would be distributed to major domestic outlets such as Sears and J.C. Penney as well as other outlets abroad. The actual recordings leased by CC Associates, however, were not exactly as represented. In fact, they were apparently of such primitive and poor quality as to be unsuitable for production and distribution.

It is undisputed that Leuhsler and his partners in CC Associates had no experience in the recording business prior to their dealings with Structured Shelters. Despite this lack of knowledge or experience, they failed to consult anyone knowledgeable or experienced in the industry. Moreover, Leuhsler never actively sought to determine the existence or quality of the actual master recordings in which CC Associates invested.

The IRS audited Leuhsler in 1986. It determined that the master recording leases were not investments engaged in for profit and lacked economic substance. The investment tax credit claimed in 1981 for the master recording leases was totally disallowed, and tax deficiencies resulted for the years 1978 to 1981. The IRS issued notices of deficiency for Gerald Leuhsler's separate returns in 1979, 1980, and 1981, and Gerald and Beverly Leuhsler's 1978 joint return. In addition to the deficiencies, penalties were imposed for negligence, 26 U.S.C. § 6653, and valuation overstatement, 26 U.S.C. § 6659(a).[2]

Leuhsler appealed to the Tax Court. The issues for the Tax Court's determination were narrowed by stipulation of the parties to Leuhsler's "liability for additions to tax for negligence...." The Tax Court found Leuhsler negligent to the extent he relied on Powers and Prohaska, neither of whom had any experience in the recording business, and Graham, who received a commission on the sale of the master recording leases. It therefore upheld the imposition of negligence penalties.

In a "supplemental brief" accompanying the requested post-trial briefs submitted to the Tax Court, Leuhsler argued against the imposition of the valuation overstatement penalties. The supplemental brief was entered in the docket but never referred to in the Tax Court's memorandum and opinion. We have not been provided the supplemental brief as part of the record on appeal, but Leuhsler has addressed the issue of valuation overstatement additions in his brief on appeal.

---

**2.** The IRS found the following deficiencies and additions to Leuhsler's federal income tax:

| | | Additions to Tax | | | |
|---|---|---|---|---|---|
| Year | Deficiency | Section 6653(a) | Section 6653(a)(1) | Section 6653(a)(2) | Section 6659(a) |
| 1978 | $4,688.00 | $234.40 | — | — | $1,406.40 |
| 1979 | 3,063.00 | 153.15 | — | — | 918.90 |
| 1980 | 4,092.00 | 204.60 | — | — | 1,227.60 |
| 1981 | 5,984.00 | — | $299.20 | *. | 1,795.20 |

* 50 percent of the statutory interest on $5,984.00.

## II.

### A.

#### Negligence

Section 6653(a) of the Internal Revenue Code, which applies in this case to the years 1978 through 1980, and section 6653(a)(1), which applies to 1981, provide that where the IRS determines that any underpayment of taxes is due to negligence or disregard of rules or regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. 26 U.S.C. §§ 6653(a), 6653(a)(1). Section 6653(a)(2), which applies in this case only to the year 1981, imposes an additional penalty in an amount equal to 50 percent of the interest due on the portion of the underpayment that is due to negligence. 26 U.S.C. § 6653(a)(2). "[T]he term 'negligence' includes any failure to make a reasonable attempt to comply with the provisions of the [Internal Revenue Code], and the term 'disregard' includes any careless, reckless, or intentional disregard." 26 U.S.C. § 6653(a)(3). Negligence is also generally defined as a lack of due care or a failure to do what a reasonable person would do under the circumstances. *Sandvall v. Commissioner*, 898 F.2d 455, 458 (5th Cir.1990).

Leuhsler challenges the negligence finding in his case. He contends that he simply relied upon more experienced investors, Prohaska and Powers, in deciding to invest and that the Commissioner and the Tax Court erred in finding this reliance to constitute a lack of due care. Leuhsler cites *Heasley v. Commissioner*, 902 F.2d 380 (5th Cir.1990), to support his position. In *Heasley*, the court held that the IRS and the Tax Court erred in assessing negligence penalties against "moderate-income" taxpayers who lacked high school diplomas, relied on financial advisors and accountants, and earnestly attempted to monitor their investment. *Id.* at 383–84.

■ We review the Tax Court's findings on negligence issues under a clearly erroneous standard. *Edison Homes, Inc. v. Commissioner*, 903 F.2d 579, 584 (8th Cir.),

*cert. denied,* —— U.S. ——, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990) (citing *Forseth v. Commissioner*, 845 F.2d 746, 749 (7th Cir. 1988)). The Commissioner's assessment of a negligence penalty is presumptively correct, and the taxpayer has the burden of proving that an underpayment was not due to his negligence or intentional disregard of IRS rules or regulations. *Id.*

■ In this case, we have no difficulty concluding that the Tax Court was not clearly erroneous in making its negligence determination and that its decision should be affirmed. There is no evidence that Leuhsler investigated the master recordings in any meaningful or substantial way prior to participating in the partnership to lease them. Nor did he seek the counsel of knowledgeable or experienced advisors in the matter. Apparently cognizant only of the incredible tax benefits possible if the claimed investment credits were accepted by the IRS, Leuhsler proceeded.

The assertion that Leuhsler reasonably relied on the advice of James Prohaska and Timothy Powers and should therefore be excused under *Heasley* is without merit. Unlike the advisors in *Heasley*, Prohaska and Powers were not professional investment counselors. Moreover, even if the two had somehow "counseled" Leuhsler in this matter, we would not reject the negligence finding of the Tax Court, for Leuhsler is not an uneducated or inexperienced client on investment and tax matters. He is a certified public accountant, and in all relevant aspects, stands on equal footing with his "advisors," who are also accountants. Prohaska and Powers are also Leuhsler's friends, coworkers, and, most importantly, his partners in CC Associates. Any reliance on their advice cannot be deemed reasonable under these circumstances.

As an accountant and reasonable person, Leuhsler should have known better, and the Tax Court was not clearly erroneous in finding that he acted negligently in this matter. We therefore affirm that finding

and the imposition of additions to tax under section 6653.

## B.
### Valuation Overstatement

Where an underpayment of tax due for the taxable year is attributable to a valuation overstatement, section 6659 of the Internal Revenue Code provides that "there shall be added to the tax an amount equal to the applicable percentage of the underpayment so attributable." 26 U.S.C. § 6659(a). A valuation overstatement is present "if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." 26 U.S.C. § 6659(c).

Leuhsler argues that the Tax Court erred in upholding the Commissioner's imposition of overvaluation penalties under section 6659. He again cites *Heasley,* 902 F.2d at 382–83, as well as *Todd v. Commissioner,* 862 F.2d 540 (5th Cir.1988). In *Heasley,* the Fifth Circuit, following precedent in the circuit as set forth in *Todd,* held that where the IRS had totally disallowed a deduction or credit and an underpayment resulted, valuation overstatement penalties were impermissible under section 6659. 902 F.2d at 383. The court reasoned: "In such a case, the underpayment is not attributable to a valuation overstatement. Instead it is attributable to claiming an improper deduction or credit." *Id.*[3]

■ Whatever the merits of Leuhsler's arguments, the question of whether overvaluation penalties are properly assessed in cases where a credit or deduction is totally disallowed for lack of economic substance is one we need not reach in this case, as Leuhsler has already conceded the issue and the assessment of additions to tax under section 6659. In a stipulation filed with the Tax Court prior to his hearing, Leuhsler stated, through counsel, that he "agree[d] that the only unresolved issue in this case is petitioners' liability for additions to tax for negligence" and "concede[d] all other issues relating to [the] Master Recording investment(s) through Structured Shelters, Inc." It was only in a post-trial "Supplemental Brief" that Leuhsler for the first time challenged the overvaluation additions, and even then it is unclear that he ever acknowledged that he had conceded the issue or offered any reasons for not addressing the matter earlier.

Stipulations waiving an issue or argument that might otherwise be waived will generally be treated as binding and conclusive. *Estate of Quirk v. Commissioner,* 928 F.2d 751, 759 (6th Cir.1991). We have previously stated that "narrowing disputes to the essential disputed issues is the primary function of stipulations." *Id.* "It would seem that if parties could challenge their prior stipulations at will, stipulations would lose much of their purpose." *Id.*

Leuhsler apparently asks us to ignore his prior stipulated concession on the issue of overvaluation penalties as well as his apparent failure to even mention the effects of the stipulation or to argue for release from its strictures before the Tax Court. We decline to do so. Leuhsler fails to present on appeal any compelling reason for disregarding his concession, and, in any event, the Tax Court was the proper forum for consideration of the issue of valuation overstatement additions to tax. We will not consider the issue for the first time on appeal.

## III.

For the foregoing reasons, the decision of the Tax Court is AFFIRMED.

---

3. The interpretation of section 6659 established in *Todd* has been adopted by at least one other circuit. *See Gainer v. Commissioner,* 893 F.2d 225, 226–28 (9th Cir.1990). It has been rejected, however, by at least two other circuits. *See* *Gilman v. Commissioner,* 933 F.2d 143, 151 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992); *Massengill v. Commissioner,* 876 F.2d 616, 619–20 (8th Cir.1989).