T.C. Memo. 2009-104

UNITED STATES TAX COURT

MICHAEL E. NAPOLIELLO, Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13983-06.                    Filed May 18, 2009.

Edward M. Robbins, Jr., for petitioner.

Halvor N. Adams III, Mark O'Leary, and Harry J. Negro, for

respondent.

MEMORANDUM OPINION

KROUPA, Judge:  This partner-level matter is before the

Court on the parties' cross-motions for summary judgment under

Rule 121.[1]  Respondent issued petitioner an affected items

deficiency notice (deficiency notice) after no partner contested

    [1]All Rule references are to the Tax Court Rules of Practice
and Procedure, and all section references are to the Internal
Revenue Code in effect for the year at issue, unless otherwise
indicated.

the partnership-level determinations in a notice of final partnership administrative adjustment (FPAA) issued to AD FX Trading 2000 Fund, LLC (partnership).[2]  There are two issues for decision.  The first issue is whether respondent issued petitioner a valid deficiency notice under section 6230(a)(2)(A)(i).  We hold that the deficiency notice is valid and we have jurisdiction because the deficiency is attributable to an affected item requiring partner-level factual determinations.  The second issue is whether the deficiency notice is invalid because the FPAA violated due process by failing to provide petitioner adequate notice of the $12,072,927 deficiency in his Federal income taxes ($12 million deficiency).  We hold that the deficiency notice is valid because the determinations in the FPAA adequately put petitioner on notice that respondent had finally determined adjustments to the partnership return.

We shall grant respondent's motion for summary judgment and deny petitioner's cross-motion for summary judgment for the reasons discussed.

<u>Background</u>

I.   <u>Preliminaries</u>

The facts we recite are included in the parties' stipulation of facts and accompanying exhibits, matters admitted in the

---

[2]The parties agree that it was conclusively determined at the partnership level that AD FX Trading 2000 Fund, LLC, is a sham that is disregarded for Federal tax purposes.  We use the terms "partnership," "partner," and related terms for convenience.

pleadings or motions, or uncontested facts presented in the parties' oral arguments. We treat the facts as true solely for purposes of deciding the parties' motions, not as findings of fact for this case. See Fed. R. Civ. P. 52(a); P & X Mkts., Inc. v. Commissioner, 106 T.C. 441, 442 n.2 (1996), affd. without published opinion 139 F.3d 907 (9th Cir. 1998).

II. Petitioner's Transactions

This case is one of many before the Court involving so-called Son-of-BOSS tax shelters packaged by various law and accounting firms.[3] Petitioner participated in the tax shelter to create a large artificial capital loss in 2000 to offset a $60 million capital gain resulting from the sale of petitioner's 50-percent interest in a Hollywood promotions agency with Jason Moskowitz known as U.S. Marketing & Promotions, Inc. Petitioner resided in California at the time he filed the petition.

Petitioner engaged in several transactions involving the partnership to create a cumulative basis of approximately $60 million in securities (partnership securities) that were purchased by the partnership for $387,951. First, petitioner contributed $1.5 million in exchange for his interest in a single-member limited liability company, MN Trading, LLC (MN Trading). Then petitioner, through MN Trading, used the $1.5 million to purchase two pairs of offsetting long and short foreign currency options, the first involving the euro and the

---

[3]See generally Kligfeld Holdings v. Commissioner, 128 T.C. 192 (2007), and Notice 2000-44, 2000-2 C.B. 255, for a general description of similar transactions.

Japanese yen and the second involving the U.S. dollar and the euro. The transactions involved purchased options with premiums of $30 million each (long options) and sold options with premiums of $29.25 million each (short options). Petitioner then contributed his interest in MN Trading in exchange for an 82.52-percent interest in the partnership. About a month later petitioner withdrew from the partnership and received cash and the partnership securities for his partnership interest. He sold the partnership securities shortly thereafter for $358,296 and reported a $60,942,026 loss ($61 million capital loss) in connection with the sale on his Form 1040, U.S. Individual Income Tax Return, for 2000.

Petitioner calculated this loss by allocating to the partnership securities his claimed outside basis in the partnership at the time of his withdrawal (less cash received). Petitioner included the premiums of the long options in determining his outside basis in the partnership, but he did not decrease his basis in the partnership to reflect the partnership's assumption of the short options.

III. Partnership-Level Determinations

Respondent issued petitioner, a notice partner in the partnership, the FPAA for 2000 as a result of the partners' participation in the tax shelter. The FPAA adjusted several partnership items for 2000 to zero, including amounts reported as capital contributions, distributions of property other than money, interest expense, distributions of money, and net loss.

In addition, respondent made several determinations in the "Exhibit A--Explanation of Items" (Exhibit A).[4]  These determinations include, among other things, that:  The partnership was not a partnership in fact; the partnership was a sham that lacked economic substance and its only purpose was tax avoidance; all transactions the partnership entered into should be treated as being entered into directly by the partners; and any purported losses resulting from the tax shelter were not allowable as deductions.  No partner timely filed a petition to contest the determinations in the FPAA.

IV.  Respondent's Partner-Level Determinations

Respondent timely issued petitioner the deficiency notice determining the $12 million deficiency in petitioner's Federal income tax for 2000.  This deficiency resulted from adjustments to income of $59,333,518 in capital gain or loss[5] and $519,326 in itemized deductions.[6]  Respondent also determined that the $61,300,322 cost basis petitioner claimed in the partnership securities was reduced to $358,383,[7] the price the partnership

_____

[4]"Exhibit A--Explanation of Items" is attached as an appendix.

[5]Respondent disallowed the $60,942,026 capital loss relating to the partnership securities and allowed $479,829 of unrelated net short-term capital losses.

[6]The itemized deductions adjustment is a computational statutory adjustment required under sec. 68 resulting from an increase in petitioner's adjusted gross income due to respondent's capital gains adjustments.

[7]Respondent originally determined that the partnership's cost basis in the securities was $358,383.  Respondent now

(continued...)

paid for the partnership securities on the date of purchase.
Respondent did not determine penalties or additions to tax
because petitioner had disclosed his participation in the tax
shelter as part of an agreement with respondent under Internal
Revenue Service Announcement 2002-2, 2002-1 C.B. 304.

Petitioner timely filed a petition for redetermination of
the deficiency with this Court.  The parties presented oral
arguments before this Court with regard to the cross-motions for
summary judgment.  Petitioner argued in his summary judgment
motion that respondent's determinations in Exhibit A,
particularly that the partnership was a sham and lacked economic
substance, were not partnership items that were conclusively
determined at the partnership level.  Petitioner has conceded,
however, that the FPAA here is materially identical to the FPAA
in Petaluma FX Partners, LLC v. Commissioner, 131 T.C. __, __
(2008) (slip op. at 22), where we held a determination that a
partnership is a sham disregarded for tax purposes is a
partnership item.  Accordingly, petitioner has abandoned this
argument.

<u>Discussion</u>

We have pending cross-motions for summary judgment and must
decide whether to grant either motion.

Petitioner does not dispute that the tax shelter in which he
participated was a sham, and he raises only procedural arguments

---

[7](...continued)
concedes that the partnership's actual cost basis was $387,951.

in defense to collection. Petitioner's arguments present two issues for decision. The first issue is whether we have jurisdiction over the deficiency determined in the deficiency notice because it is attributable to affected items requiring partner-level determinations. We conclude that we do have jurisdiction. The second issue is whether the FPAA violated the notice requirement of due process. We conclude that it did not.

We begin by discussing the standard for summary judgment. We then turn to the Court's jurisdiction to redetermine the $12 million deficiency and petitioner's tax liability. Finally, we address petitioner's due process argument.

I.    Summary Judgment Standard

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. See, e.g., FPL Group, Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). Either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(a). We may grant a summary judgment motion where there is no genuine issue of any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

This case is ripe for summary judgment because all of the relevant facts are undisputed and a decision may be rendered as a matter of law.

II.  General TEFRA Procedures

We now turn to our jurisdiction in affected items deficiency notice cases.  This Court is a court of limited jurisdiction, and we may exercise jurisdiction only to the extent provided by statute.  See sec. 7442; GAF Corp. & Subs. v. Commissioner, 114 T.C. 519, 521 (2000).  Our jurisdiction to redetermine a deficiency in tax depends on a valid deficiency notice and a timely filed petition.  GAF Corp. & Subs. v. Commissioner, supra at 521.  A taxpayer to whom a deficiency notice has been sent can generally petition this Court for a redetermination of the deficiency.  Sec. 6213.  Special rules apply, however, for certain partnerships and their partners.

Partnerships do not pay Federal income taxes, but they are required to file annual information returns reporting the partners' distributive shares of income, deductions, and other tax items.  Secs. 701, 6031.  The individual partners then report their distributive shares of the tax items on their Federal income tax returns.  Secs. 701-704.  Congress enacted the unified audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub L. 97-248, Sec. 401, 96 Stat. 648, to provide consistent treatment of partnership items among partners in the same partnership and to ease the substantial administrative burden that resulted from duplicative audits and litigation.  See Petaluma FX Partners, LLC v. Commissioner, supra at __ (slip op. at 10).

Under the TEFRA rules, partnership items are determined in partnership-level proceedings, while nonpartnership items are determined at the individual partner level. Sec. 6221; Affiliated Equip. Leasing II v. Commissioner, 97 T.C. 575, 576 (1991). A partnership item is any item required to be taken into account for the partnership's taxable year to the extent regulations specify it is an item more appropriately determined at the partnership level than the partner level. Sec. 6231(a)(3).

Partnership-level determinations also impact certain items of individual partners. These are referred to as affected items, and their resolution depends on partnership-level determinations. Sec. 6231(a)(5); Maxwell v. Commissioner, 87 T.C. 783, 792 (1986). Affected items cannot be tried as part of a partner's personal tax case until the partnership-level proceeding has concluded. Maxwell v. Commissioner, supra at 792.

III. The Parties' Arguments

The parties agree that the deficiency notice is valid and we have jurisdiction in this partner-level case only if the deficiency procedures of subchapter B of chapter 63 (deficiency procedures) apply as provided under section 6230(a)(2)(A). Respondent argues that we have jurisdiction under section 6230(a)(2)(A)(i) because the deficiency is attributable to an affected item and requires partner-level factual determinations. Petitioner makes two counterarguments that the requirements of section 6230(a)(2)(A)(i) have not been met and therefore

respondent was required to directly assess the tax rather than issuing the deficiency notice.  First, petitioner argues that the deficiencies are attributable to a partnership item, outside basis, rather than an affected item.  Second, petitioner argues that even if the deficiency is attributable to an affected item, respondent should have directly assessed the tax because respondent was not required to make partner-level factual determinations.  We disagree with both of petitioner's arguments and address them each in turn.

IV.  Deficiency Attributable to an Affected Item

This Court has repeatedly held that we lack jurisdiction, in a partner-level proceeding involving nonpartnership items, to redetermine a deficiency, or any portion thereof, attributable to the tax treatment of a partnership item.  Bradley v. Commissioner, 100 T.C. 367, 371 (1993) (this Court may not redetermine a partner's distributive share of partnership losses in a partner-level proceeding).  We now decide whether the $12 million deficiency is attributable to a partnership item.

Respondent determined in the deficiency notice that petitioner's cost bases in the partnership securities were the actual amounts the partnership paid for the securities and allocated no additional costs to the securities.  Respondent then disallowed both the $61 million capital loss petitioner reported from the sale of the securities and certain itemized deductions to determine the $12 million deficiency.  Respondent adjusted petitioner's bases in the partnership securities as a result of

the determinations in the FPAA that the partnership is disregarded as a sham and all of the partnership's transactions are treated as being engaged in directly by the partners. These determinations are partnership items. See Petaluma FX Partners, LLC v. Commissioner, 131 T.C. at __ (slip op. at 21-22). We do not have jurisdiction to revisit these determinations as they were conclusively determined when no partner contested the determinations in the FPAA. See Genesis Oil & Gas, Ltd. v. Commissioner, 93 T.C. 562, 565-566 (1989); see also Sente Inv. Club Pship. v. Commissioner, 95 T.C. 243 (1990); Palmer v. Commissioner, T.C. Memo. 1992-352, affd. without published opinion 4 F.3d 1000 (11th Cir. 1993).

Petitioner ignores the determinations in the deficiency notice and argues that the deficiency is attributable to petitioner's outside basis in the partnership, which he argues is a partnership item. We recently held that we may determine a partner's outside basis at the partnership level in limited circumstances where the partnership is disregarded as a sham in a partnership-level proceeding. Petaluma FX Partners, LLC v. Commissioner, supra. Petitioner asserts that, if his outside basis in the partnership is zero, then his bases in the partnership securities are zero,[8] and we lack jurisdiction to redetermine the deficiency because it is attributable to a

_____

[8]Generally, the basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction. Sec. 732(b).

partnership item, outside basis.  See <u>Bradley v.Commissioner</u>, <u>supra</u> at 371.

Petitioner's argument is misplaced.  Affected items are defined to include any item to the extent that it is affected by a partnership item.  Sec. 6231(a)(5).  We hold that petitioner's bases in the partnership securities are affected items because they result from the conclusive partnership-level determinations disregarding the partnership as a sham and treating all of the partnership's transactions as being engaged in directly by the partners.

V.   <u>Affected Items That Require Partner-Level Determinations</u>

Petitioner argues, in the alternative, that we still lack jurisdiction even if the deficiency is attributable to an affected item because no partner-level determinations were necessary to determine the $12 million deficiency under section 6230(a)(2)(A)(i).  Respondent counters that the deficiency notice was necessary because determination of the deficiency requires partner-level determinations.  We agree with respondent.

There are two types of affected items.  Petitioner asserts that his bases in the partnership securities are of the first type, which requires a strictly computational adjustment to record the change in a partner's tax liability resulting from the proper treatment of partnership items.  Sec. 6231(a)(6); see <u>Brookes v. Commissioner</u>, 108 T.C. 1, 5 (1997).  Computational affected items include those items on a partner's return that vary if there is a change in the individual partner's adjusted

gross income, for example, the threshold dollar limit for the medical expense deduction under section 213.  Sec. 301.6231(a)(6)-1T(a)(1), Temporary Proced. & Admin. Regs, 64 Fed. Reg. 3840 (Jan. 26, 1999).  Once the partnership-level proceedings are completed, the Commissioner is permitted to assess a computational adjustment against a partner without issuing a deficiency notice.  See sec. 6230(a)(1); Brookes v. Commissioner, supra at 5.

Petitioner's $12 million deficiency is not attributable to this purely computational type of affected item.  Instead, it falls within the second type of affected item, one that is dependent upon factual determinations that are made at the individual partner level.  See Brookes v. Commissioner, supra at 5.  Respondent was required to make partner-level factual determinations regarding petitioner's losses from the sale of the distributed partnership securities.  For example, respondent needed to determine, among other things, the number and identity of securities petitioner received from the partnership, the price at which petitioner sold the respective securities, and any other associated allowable costs of the sale.  See Domulewicz v. Commissioner, 129 T.C. 11, 20 (2007); sec. 301.6231(a)(6)-1T(a)(2), Temporary Proced. & Admin. Regs, 64 Fed. Reg. 3840 (Jan. 26, 1999).  Because the normal deficiency procedures apply to affected items that require partner-level determinations, we hold that the deficiency notice is valid and we have jurisdiction to redetermine the deficiency.  See sec. 6230(a)(2)(A)(i).

VI.  <u>The Deficiency</u>

We have determined that we have jurisdiction to redetermine the $12 million deficiency, and we do so now.  Respondent disallowed the reported $61 million capital loss in determining the deficiency.  In addition, respondent argues that he properly disallowed $1.6 million in alleged transaction costs related to the partnership.  We focus now on disallowing any capital loss.

The parties agree that it was conclusively determined at the partnership level that the partnership is a sham without economic substance and is disregarded for tax purposes.  Petitioner concedes that there can be no outside basis in a disregarded partnership.  <u>Petaluma FX Partners, LLC v. Commissioner</u>, 131 T.C. at __ (slip op. at 26).  Accordingly, petitioner had no outside basis in the partnership to attach to the assets he received from the partnership in purported liquidation of his interest under section 732(b), and petitioner's bases in the partnership securities cannot be inflated by his purported outside basis in the partnership.

Petitioner is considered, instead, to have purchased the partnership securities directly as determined in the FPAA.  See sec. 1.701-2(b)(1), Income Tax Regs.  Accordingly, petitioner's cumulative basis in the partnership securities is $387,951, the partnership's cost basis on the date the partnership purchased the securities, under sections 1011 and 1012.  Petitioner sold the partnership securities for $358,296.  Subtracting the $358,296 sale price from the $387,951 cost creates a $29,655

loss.  Respondent disallowed this loss because he determined that petitioner had no profit motive under section 165(c)(2) for entering into the stock transaction and that the stock transaction lacked economic substance.  See Illes v. Commissioner, 982 F.2d 163, 165-166 (6th Cir. 1992), affg. T.C. Memo. 1991-449; Forseth v. Commissioner, 845 F.2d 746 (7th Cir. 1988), affg. 85 T.C. 127 (1985); Enrici v. Commissioner, 813 F.2d 293 (9th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985).  Petitioner does not contest respondent's determinations. Instead, petitioner raises only procedural arguments in which he admits that he did not recognize a loss on the sale of the partnership securities.[9]  We conclude that petitioner has conceded this issue.  Accordingly, we uphold respondent's determination disallowing the loss.

We now turn to the $1.6 million transaction costs that petitioner alleges are deductible under section 162 or 212. Ordinary and necessary expenses paid or incurred in carrying on any trade or business are generally deductible.  Sec. 162. Similarly, the ordinary and necessary expenses paid for the production, management, or maintenance of property held for the production of income may also be deductible.  Sec. 212. Petitioner is required to have profit as a primary objective instead of tax savings to take deductions under these sections, however.  See Agro Science Co. v. Commissioner, 934 F.2d 573, 576

---

[9]Petitioner argues he had no bases in the partnership securities and therefore could not recognize a loss on their sale.

(5th Cir. 1991), affg. T.C. Memo. 1989-687; <u>Fischer v. United States</u>, 490 F.2d 218, 222 (7th Cir. 1973); <u>Hirsch v. Commissioner</u>, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256; <u>Looney v. Commissioner</u>, T.C. Memo. 1985-326, affd. without published opinion 810 F.2d 205 (9th Cir. 1987). We conclude that petitioner did not have a profit motive but entered into the partnership solely to create a large artificial capital loss to lower his tax liability.

Further, petitioner may not deduct costs incurred to implement a transaction that lacks economic substance. <u>New Phoenix Sunrise Corp. v. Commissioner</u>, 132 T.C. __, __ (2009) (slip op. at 38-40). We conclude that petitioner's participation in the partnership cannot form the basis of any deductions because the partnership is disregarded as a sham without economic substance. See <u>Ferguson v. Commissioner</u>, 29 F.3d 98, 102 (2d Cir. 1994), affg. <u>Peat Oil & Gas Associates v. Commissioner</u>, 100 T.C. 271 (1993). Accordingly, we hold that respondent properly disallowed these deductions.

VII. <u>Notice Requirements of Due Process</u>

We now address petitioner's final argument. Petitioner argues that the deficiency notice is invalid because the FPAA did not provide petitioner with fair notice and violated his right to due process of law.[10] Petitioner admits he received the FPAA but argues that it did not provide him adequate notice that his

---

[10]"No person shall * * * be deprived of life, liberty, or property, without due process of law". U.S. Const. amend. V.

failure to file a petition would conclusively preclude him from contesting an approximately $12 million deficiency. We disagree that there is a due process violation.

A fundamental requirement of due process is notice reasonably calculated, under all the circumstances, to inform interested parties of the pendency of the action and afford them an opportunity to present their objections. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Due process is flexible, however, and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

TEFRA's notice provisions generally safeguard due process rights by providing partners with notice of the partnership adjustment and an opportunity to participate in the partnership-level proceeding. See Walthall v. United States, 131 F.3d 1289, 1294-1295 (9th Cir. 1997); Brookes v. Commissioner, 108 T.C. at 5. An FPAA need not be in any particular form, and any statements or computations in or attached to the FPAA may be considered in determining its validity. See generally Clovis I v. Commissioner, 88 T.C. 980, 982 (1987). An FPAA must, however, provide minimal notice to the taxpayer that the Internal Revenue Service (IRS) has finally determined adjustments to the partnership return. Triangle Investors Ltd. Pship. v. Commissioner, 95 T.C. 610, 613 (1990); Clovis I v. Commissioner, supra at 982. An FPAA is not required to notify partners of

their individual tax deficiencies at the partner level as petitioner contends.

Respondent notified petitioner in the FPAA's Exhibit A that the partnership is disregarded for tax purposes, that all transactions engaged in by the partnership are treated as engaged in directly by its partners, and that the partners would not be allowed to inflate their bases in the partnership to eliminate gain. Petitioner received the FPAA and had the opportunity to file a petition at the partnership level contesting respondent's determinations in the FPAA. Petitioner chose not to do so.

Petitioner waited until the partner-level proceeding, instead, to argue that the FPAA did not provide him adequate notice. He makes this argument despite the multiple determinations in the FPAA that disallow all tax benefits of the tax shelter. Petitioner's participation in a complicated basis-inflating tax shelter belies his naivete. Petitioner purchased a packaged tax shelter involving several sophisticated transactions to avoid paying taxes on a $60 million gain. He received the advice of multiple professionals, including counsel, regarding this purchase. He later disclosed his participation in this tax shelter to avoid paying additions to tax or penalties.

We conclude that the FPAA provided fair and reasonable notice to petitioner that the IRS had finally determined adjustments to the partnership return and did not violate petitioner's right to due process of law.

VIII. <u>Conclusion</u>

We conclude that respondent is entitled to judgment as a matter of law.  Accordingly, we shall grant respondent's motion for summary judgment and deny petitioner's motion for summary judgment.

In reaching our holdings, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order and order and decision will be entered</u>.

APPENDIX

EXHIBIT A - Explanation of Items

1.  It is determined that neither AD FX Trading 2000 Fund, LLC nor its purported partners have established the existence of AD FX Trading 2000 Fund, LLC as partnership as a matter of fact.

2.  Even if AD FX Trading 2000 Fund, LLC existed as a partnership, the purported partnership was formed and availed of solely for purposes of tax avoidance by artificially overstating basis in the partnership interests of its purported partners.  The formation of AD FX Trading 2000 Fund, LLC, the acquisition of any interest in the purported partnership by the purported partner, the purchase of offsetting options, the transfer of offsetting options to a partnership in return for a partnership interest, the purchase of assets by the partnership, and the distribution of those assets to the purported partners in complete liquidation of the partnership interests, and the subsequent sale of those assets to generate a loss, all within a period of less than 3 months, had no business purpose other than tax avoidance, lacked economic substance, and, in fact and substance, constitutes an economic sham for federal income tax purposes.  Accordingly, the partnership and the transactions described above shall be disregarded in full and (1) any purported losses resulting from these transactions are not allowable as deductions; (2) increases in basis of assets are not allowed to eliminate gain; or (3) increases to the adjusted basis of partnership interests to circumvent the loss limitation of §704(d) are not allowed for federal income tax purposes.

3.  It is determined that AD FX Trading 2000 Fund, LLC was a sham, lacked economic substance and, under § 1.701-2 of the Income Tax Regulations, was formed and availed of in connection with a transaction or transactions in taxable year 2000, a principal purpose of which was to reduce substantially the present value of its partners' aggregate federal tax liability in a manner that is inconsistent with the intent of Subchapter K of the Internal Revenue Code.  It is consequently determined that:

    a.  the AD FX Trading 2000 Fund, LLC is disregarded and that all transactions engaged in by the purported partnership are treated as engaged in directly by its purported partners.  This includes the determination that the assets purportedly acquired by AD FX Trading 2000 Fund, LLC, including but not limited to foreign currency

options, were acquired directly by the purported partners.

b.   the foreign currency option(s), purportedly contributed to or assumed by AD FX Trading 2000 Fund, LLC, are treated as never having been contributed to or assumed by said partnership and any gains or losses purportedly realized by AD FX Trading 2000 Fund, LLC on the option(s) are treated as having been realized by its partners.

c.   the purported partners of AD FX Trading 2000 Fund, LLC should be treated as not being partners in AD FX Trading 2000 Fund, LLC.

d.   contributions to AD FX Trading 2000 Fund, LLC will be adjusted to reflect clearly the partnership's or purported partners' income.

4.   It is determined that the obligations under the short positions (written call options) transferred to AD FX Trading 2000 Fund, LLC constitute liabilities for purposes of Treasury Regulation §1.752-6T, the assumption of which by AD FX Trading 2000 Fund, LLC shall reduce the purported partner's basis in AD FX Trading 2000 Fund, LLC in the amount of $58,500,000, for Michael E. Napoliello, Jr. but not below the fair market value of the purported partnership interest.

5.   It is determined that neither AD FX Trading 2000 Fund, LLC nor its purported partners entered into the option(s) positions or purchase the foreign currency or stock with a profit motive for purposes of § 165(c)(2).

6.   It is determined that, even if the foreign currency option(s) are treated as having been contributed to AD FX Trading 2000 Fund, LLC, the amount treated as contributed by the partners under section 722 of the Internal Revenue Code is reduced by the amounts received by the contributing partners from the contemporaneous sales of the call option(s) to the same counter-party. Thus, the basis of the contributed option(s) is reduced, both in the hands of the contributing partners and AD FX Trading 2000 Fund, LLC. Consequently, any corresponding claimed increases in the outside basis in AD FX Trading 2000 Fund, LLC resulting from the contributions of the foreign currency option(s) are disallowed.

7.   It is determined that the adjusted bases of the long call positions (purchased call options), and other contributions purportedly contributed by the partners to AD FX Trading 2000 Fund, LLC has not been established under I.R.C. § 723.

It is consequently determined that the partners of AD FX Trading 2000 Fund, LLC have not established adjusted bases in their respective partnership interests in an amount greater than zero (-0-).

8. It is further determined that, in the case of a sale, exchange, or liquidation of AD FX Trading 2000 Fund, LLC partners' partnership interests, neither the purported partnership nor its purported partners have established that the bases of the partners' partnership interests were greater than zero for purposes of determining gain or loss to such partners from the sale, exchange, or liquidation of such partnership interest.