HUGH J. BEARD, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beard v. Commissioner
Docket No. 13297-93
United States Tax Court
T.C. Memo 1995-41; 1995 Tax Ct. Memo LEXIS 52; 69 T.C.M. (CCH) 1768; January 30, 1995, Filed *52 Decision will be entered under Rule 155. Hugh Joseph Beard, Jr., pro se. For respondent: Chalmers W. Poston, Jr. and Charles M. Ruchelman. CHIECHI
CHIECHI
MEMORANDUM FINDINGS OF FACT AND OPINION CHIECHI, Judge: Respondent determined the following deficiencies in, addition to, and accuracy-related penalties on petitioner's Federal income tax: Accuracy-
Addition to Tax
Related Penalty
Section
Section
Year
Deficiency
6653(a)(1) [1]
6662(a)
1988
$ 8,308.90
$ 415.45 --
1989
8,512.34
--
1,702.47
1990
7,719.09
--
$ 1,543.82
The issues remaining for decision are: (1) Is petitioner entitled to certain deductions under section 162(a) for each of the years 1988, 1989, and 1990 for expenses he incurred that were unrelated to his employment as an attorney with the Federal Government? We hold *53 that he is not. (2) Is petitioner liable for the addition to tax for negligence under section 6653(a)(1) for 1988 and for the accuracy-related penalty for negligence under section 6662(a) for each of the years 1989 and 1990? We hold that he is to the extent provided herein. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, an attorney, had a mailing address in Washington, D.C., at the time the petition was filed. Petitioner was admitted to the bar of the State of North Carolina in 1971 and the bar of the District of Columbia in 1982. From May 1, 1973, through May 1, 1981, petitioner practiced law as a sole practitioner in Charlotte, North Carolina. From 1975 through April 1981, petitioner was executive director of the North Carolina Fund for Individual Rights (NCFIR). From 1978 through April 1981, petitioner was secretary-treasurer of the Southern Employees Education Fund. On May 4, 1981, petitioner became Deputy General Counsel of the United States Department of Education and served in that position through March 15, 1984. Thereafter, petitioner became Special Assistant to the Assistant Attorney General for Civil Rights at the United *54 States Department of Justice (DOJ) and served in that position through September 15, 1992. On December 1, 1992, petitioner became president of the Equal Opportunity Foundation and was serving in that position as of the date of the trial herein. During the years 1988, 1989, and 1990, petitioner spent approximately 40 to 45 hours per week in his position at DOJ and earned approximately $ 67,528, $ 70,239, and $ 72,698, respectively. During the years at issue, petitioner did not know how long his employment with DOJ would last. For each of the years at issue, petitioner filed a tax return that included a Schedule C (Profit or Loss from Business) in which he indicated that his business or profession was that of an attorney. Hereinafter, the activity in which petitioner claimed he was engaged in the Schedules C that were included with his returns for the years at issue and for the years preceding and following such years during which he was employed by the Federal Government, viz., 1981-1992, will be referred to as non-Government activity. For each of the years at issue, petitioner reported the following information in Schedule C: 1988
1989
1990
Income
$   400.03 $   290.49 $    30.00 Expenses
Bank service charges
75.00 308.10 220.65 Car and truck expenses
195.92 -- -- Dues and publications
1,901.38 3,135.07 2,019.60 Interest -- other
134.50 -- 507.82 Legal & professional services
-- -- 505.90 Office expense
743.96 538.48 490.32 Supplies
-- 130.34 476.47 Taxes and licenses
-- 25.00 50.00 Travel
252.17 405.00 -- Meals and entertainment
2,673.82 2,578.11 2,789.51 Utilities and telephone
107.41 25.15 190.59 Net Loss
($ 5,684.13)
($ 6,854.76)
($ 7,220.86)
*55 The source of the $ 400.03 of income reported by petitioner in Schedule C for 1988 was reimbursements for expenses. The sources of the $ 290.49 of income reported by petitioner in Schedule C for 1989 were petitioner's father and the sale of property on behalf of another person for which petitioner received a $ 40.00 commission. The record does not disclose the source of the $ 30 of income reported by petitioner in Schedule C for 1990. Included in the expenses under the category "dues and publications" that petitioner claimed in Schedule C for each of the years 1988, 1989, and 1990 were costs for (1) subscriptions to publications such as the Supreme Court Reporter and the National Review, (2) publications purchased from organizations such as the Conservative Book Club and Laissez Faire Books, and (3) dues and/or attendance at meetings of organizations such as the North Carolina Bar Association and the Federalist Society. Included in the expenses under the category "travel" that petitioner claimed in Schedule C for each of the years 1988 and 1989 were costs for his attendance at the Republican National Convention and the District of Columbia Judicial Conference during 1988 and *56 the Philadelphia Society Conference in 1989. Included in the expenses under the category "meals and entertainment" that petitioner claimed in Schedule C for each year at issue were costs for his entertaining former and potential clients and associates that were incurred by him generally by having taken them to lunch and/or dinner and occasionally by having given them gifts. For each year that he was employed by the Federal Government, petitioner reported in the Schedule C that was included with his return for each such year the following income, expenses, and net income or loss relating to his non-Government activity: Year
Income Expenses
Net Income or (Loss)
1981
$  14,298
$ 24,076
$   (9,778)
1982
357
5,123
(4,766)
1983
1,011
11,818
(10,807)
1984
1,601
6,814
(5,213)
1985
745
3,853
(3,108)
1986
106,205
1,739
104,466 1987
652
12,405
(11,753)
1988
400
6,084
(5,684)
1989
290
7,145
(6,855)
1990
30
7,251
(7,221)
1991
0
4,929
(4,929)
1992
1,965
1,923
42 The $ 106,205 in income reported by petitioner in Schedule C for 1986 represented fees he received during that year from having represented NCFIR prior to the time he began working *57 for the Federal Government in 1981. During the years at issue, petitioner attempted to collect another fee that he earned prior to 1981 from the Mid-Atlantic Legal Foundation (MALF). Petitioner abandoned that effort when he realized that MALF did not have any funds with which it could pay that fee. Petitioner attempted to start or revive another legal foundation during the years at issue in order to support himself after terminating his employment with the Federal Government. Prior to the years at issue, petitioner represented his father on matters relating to his estate, textile company, and real estate holdings and was compensated for those services. Petitioner's father sold that textile company during 1988. During the years at issue, petitioner continued to represent his father, but he collected only $ 250 in fees from his father during those years. The fees petitioner charged his father were much less than he would have charged other clients. During each of the years at issue, petitioner worked only intermittently at his non-Government activity, and therefore it was difficult for him to calculate an average number of hours that he spent each week in pursuit of that activity. *58 Petitioner wrote two law review articles for publication during those years. His only form of advertising his non-Government activity during the years at issue was to print business cards for distribution. Petitioner did not maintain legal malpractice insurance during those years because he determined that it was too costly given the limited nature of his non-Government activity. OPINION Petitioner bears the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions under Section 162(a) -- Trade or Business
On brief, respondent argues that petitioner was not engaged during any of the years at issue in the trade or business of the private practice of law within the meaning of section 162(a) because he did not pursue his non-Government activity (1) with "continuity and regularity" or (2) with the good faith objective of making a profit. We agree with respondent that, on the instant record, petitioner did not engage during any of the years at issue in his non-Government activity with sufficient "continuity and regularity" so that it constituted *59 a trade or business within the meaning of section 162(a). [2] See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Polakis v. Commissioner, 91 T.C. 660, 669 (1988). Even assuming arguendo that petitioner's non-Government activity were conducted with sufficient "continuity and regularity", based on the instant record, we find that petitioner was not engaged in his non-Government activity during any of the years at issue with an actual and honest objective of making a profit within the meaning of sections 162(a) and 183(a). Section 183(a) provides that if an activity is not engaged in for profit, no deduction attributable to that activity, including a deduction under section 162(a), is allowed except as provided in section 183(b). Section 183(b)(1) allows certain deductions without regard to whether or not an activity *60 is engaged in for profit. Section 183(b)(2) further allows certain other deductions but only to the extent of the gross income derived from the activity. Section 183(c) defines an activity not engaged in for profit as any activity other than one with respect to which deductions are allowable under section 162 or section 212. [3]
In determining whether an activity is engaged in for profit, the taxpayer must show that he or she engaged in the activity with an actual and honest objective of making a profit. E.g., Hulter v. Commissioner, 91 T.C. 371, 392 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation need *61 not be reasonable, but he or she must have a good faith objective of making a profit. E.g., Dreicer v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs. Petitioner bears the burden of proving the requisite intent. E.g., Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); Johnson v. Commissioner, 59 T.C. 791, 813 (1973), affd. 495 F.2d 1079 (6th Cir. 1974). The determination of whether an activity is engaged in for profit is to be made by reference to all the facts and circumstances. E.g., Hulter v. Commissioner, supra at 393; Taube v. Commissioner, 88 T.C. 464, 480 (1987); sec. 1.183-2(a) and (b), Income Tax Regs. We give greater weight to objective facts than to a taxpayer's mere statement of intent. E.g., Dreicer v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs.
In determining whether an activity is engaged in for profit, section 1.183-2(b), Income Tax *62 Regs., lists the following nine factors that are to be taken into account: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profit, if any, that is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. The list is not exclusive, and other factors may be considered in determining whether an activity is engaged in for profit. No single factor is dispositive. E.g., Golanty v. Commissioner, supra at 426; sec. 1.183-2(b), Income Tax Regs. The determination of a profit objective is not based on a mere counting of the number of factors that support each party's position. E.g., Dunn v. Commissioner, 70 T.C. 715, 720 (1978), affd. on another issue *63 615 F.2d 578 (2d Cir. 1980); sec. 1.183-2(b), Income Tax Regs.
During the years at issue, petitioner, who was a member of the bars of both North Carolina and the District of Columbia, was qualified to engage in the private practice of law in both of those jurisdictions. It appears from the record that, for several years prior to 1981, petitioner made a profit from the private practice of law. From 1981 through 1992, petitioner was employed by the Federal Government as an attorney. As a result, during that period, he did not rely on his non-Government activity as his primary source of income. Throughout his employment with the Federal Government, and particularly during his employment with DOJ from 1984 through 1992, which included the years at issue, petitioner was generally prohibited from engaging in the private practice of law except under very limited circumstances. The limitations placed on petitioner as an employee of DOJ were prescribed by 28 C.F.R. sec. 45.735-9 (1994) (DOJ regulation). During the years at issue, that regulation provided that professionals, including attorneys like petitioner, could not engage in the private practice of their *64 profession while employed by DOJ, except that professionals were allowed to provide pro bono services to the general public. In addition, the DOJ regulation provided that professionals could provide professional services, pursuant to 28 C.F.R. sec. 45.735-6(d) (1994), to those relatives and personal fiduciaries who were listed in that section. 28 C.F.R. sec. 45.735-9(d) (1994) (hereinafter part (d) of the DOJ regulation). Under 28 C.F.R. sec. 45.735-6(d) (1994), an employee of DOJ, including a professional, could act, whether for compensation or not, as an agent or attorney on behalf of certain relatives, including parents, and fiduciaries. Petitioner does not argue that he carried on his non-Government activity during the years at issue in violation of the DOJ regulation. However, he asserts that he continued to engage in his non-Government activity for profit within the narrow confines permitted by that regulation, namely, by providing pro bono services to the general public and professional services, whether for compensation or not, to relatives and fiduciaries. Respondent argues that the DOJ regulation was an absolute prohibition on petitioner's engaging in the private practice *65 of law for profit during the years at issue. Based on our review of the entire record, we find that petitioner did not engage in his non-Government activity during the years at issue with an actual and honest objective of making a profit. Therefore, we need not decide the parties' dispute as to whether an employee of DOJ could ever be engaged in the private practice of his or her profession for profit without violating the limits of the DOJ regulation. Part (d) of the DOJ regulation, which permits professionals to provide professional services for compensation to certain relatives and fiduciaries, is the only provision in that regulation that permits an attorney employed by DOJ to provide professional services for compensation. [4] The only relative and/or fiduciary petitioner claims to have represented for compensation during the years at issue was his father from whom he received total compensation of approximately $ 250 during those years. [5] The fees he charged his father for legal services during those years were less than he would have charged any other client. If petitioner had a good faith objective of making a profit from his non-Government activity during the years at *66 issue, he would have charged his father an arm's-length fee for his services, since his father was one of the few persons under the DOJ regulation that he could, and the only person he actually did, represent for compensation. *67 It is also significant that petitioner worked only intermittently at his non-Government activity during each of the years at issue. He estimated that he spent only approximately 50 to 100 hours engaged in that activity during any year at issue. This apparently included time spent to entertain former and potential clients and associates and to attend conventions and meetings of various organizations. In addition, petitioner did not hold himself out as engaging in the private practice of law during the years at issue. Other than having business cards printed for distribution, he did not advertise his non-Government activity. Petitioner asserts that the income he reported in 1986 shows that his non-Government activity was capable of generating an occasionally large profit. However, the income reported by petitioner in that year was derived entirely from a fee petitioner received during that year for legal services provided prior to May 1981 when he entered employment with the Federal Government. Thus, that income is attributable to his prior practice of law, and not to his non-Government activity. Despite the fact that, during the years at issue, petitioner did not perform any *68 substantial legal services for compensation in connection with his non-Government activity, he nonetheless argues that his non-Government activity was undertaken with the good faith objective of making a profit because it was designed to ensure that he "would have contacts when [he] left the government." We have previously considered the issue of whether an attorney is entitled to business expense deductions with respect to the claimed private practice of law during periods of employment with the Federal Government. In Owen v. Commissioner, 23 T.C. 377, 380-381 (1954), the taxpayer was an attorney who had a private practice in Grand Forks, North Dakota, for many years. In 1944, he accepted a job with DOJ in Washington, D.C., but did not expect that job to last beyond the end of World War II. However, the taxpayer remained employed with DOJ from 1944 through 1954. For the period during which he was employed with DOJ, he rendered no legal services in connection with his prior practice and received no income from that practice or from any other source other than DOJ. However, the taxpayer did maintain an office in Grand Forks throughout that period *69 because he "wanted to keep [his] contacts." Id. at 378-379, 381. After noting that the taxpayer was not interested in current profits from his alleged private practice of law, but rather was interested simply in maintaining a foundation to generate future profits, we found in Owen that maintaining the contacts and goodwill generated by an activity previously engaged in for profit with the intent of returning to that activity at some unspecified future date did not constitute a trade or business during the period for which the taxpayer was employed by the Federal Government. Id. at 381; see also Wyatt v. Commissioner, 56 T.C. 517, 519-520 (1971). The present case does not differ in any material respect from the facts in Owen v. Commissioner, supra. Beginning in 1981 and after several years of operating an apparently profitable law practice in North Carolina, petitioner, like the taxpayer in the Owen case, accepted a job with the Federal Government in Washington, D.C. Petitioner, like the taxpayer in Owen, did not know how long his employment *70 with the Federal Government would last. Also like the taxpayer in Owen, petitioner was simply maintaining a foundation for generating profits in the future. Although petitioner did perform some legal services in connection with his non-Government activity during the years at issue, none of those services was substantial or was performed with the good faith objective of generating a current profit, and the income from those services was de minimis. By his own testimony, petitioner admitted that his non-Government activity during the years at issue consisted primarily of maintaining his contacts in order to ensure that he would have contacts when he left DOJ and returned to the private practice of law. Petitioner relies heavily on examples 5 and 6 contained in section 1.183-2(c), Income Tax Regs., to support his position that he was engaged in his non-Government activity for profit during the years at issue. Petitioner's reliance on those examples is misplaced. In those examples, the taxpayers, an independent oil and gas operator and a research chemist, respectively, are engaged in certain activities that are unlikely to yield current or future profits. Both taxpayers are *71 engaged in their respective activities in a manner substantially similar to others engaged in the same activities. The examples conclude that such taxpayers are engaged in activities for profit because there is a possibility of making a discovery from those activities that could result in large profits. The instant case is based on facts that are materially different from those described in examples 5 and 6, section 1.183-2(c), Income Tax Regs. For reasons discussed above, petitioner did not carry on his non-Government activity in a manner substantially similar to others engaged in the private practice of law for profit. In addition, the manner in which petitioner conducted his non-Government activity could not result in his receiving large or, for that matter, any profits from that activity. Only if petitioner changed materially how he conducted his non-Government activity (e.g., by providing more services for compensation) could he have had an actual and honest objective of making a profit. As was true in Owen v. Commissioner, supra, petitioner's non-Government activity permitted him to maintain a "foundation" that would allow him to have *72 contacts when he left Government service and returned to the private practice of law. We have considered all of petitioner's arguments and, on the present record, do not find them to be meritorious. [6] Based on our review of that record, we find that petitioner failed to prove that he was engaged in his non-Government activity with an actual and good faith objective of making a profit during any of the years at issue. Accordingly, we hold that, pursuant to section 183(a), petitioner is not entitled to deductions for expenses incurred in connection with his non-Government activity during the years at issue except as provided in section 183(b).[7]
*73 Negligence
Respondent determined that petitioner is liable for the addition to tax for negligence under section 6653(a)(1) for 1988 and for the accuracy-related penalty for negligence under section 6662(a) for each of the years 1989 and 1990. [8] With respect to 1988, section 6653(a)(1) provides for an addition to tax equal to five percent of the entire underpayment if any portion of the underpayment for that year is attributable to negligence or disregard of the rules or regulations. With respect to 1989 and 1990, section 6662(a) and (b) provides for an addition to tax equal to 20 percent of the amount of the underpayment attributable to, inter alia, negligence or disregard of the rules or regulations. For purposes of both sections 6653(a)(1) and 6662(a), the term "negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard. Secs. 6653(a)(3), 6662(c). Negligence has also been defined as a lack of due care or failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), *74 affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Neely v. Commissioner, 85 T.C. 934, 947 (1985). *75 With respect to 1989 and 1990, the accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper tax liability. Id.
Petitioner asserts that he was not negligent and that he otherwise acted with reasonable cause and in good faith in claiming deductions for his non-Government activity during the years at issue because the law was sufficiently unclear so as to cause a reasonable person to believe that the deductions he claimed as business expenses under section 162(a) were warranted. We disagree. We note first that petitioner, an attorney, clearly understood that the DOJ regulation placed significant restraints on professionals by generally prohibiting them from carrying on the private practice of their profession for compensation. Moreover, as noted *76 above, petitioner received total compensation of at most approximately $ 320 for legal services he provided in connection with his non-Government activity during the years at issue, $ 250 of which was received from his father. In addition, in Owen v. Commissioner, 23 T.C. at 380-381, a case with facts analogous to petitioner's case, the Court previously held that an attorney who maintained his contacts from his prior private practice of law with the intention of returning to that practice was not engaged in a trade or business during the period of his employment with DOJ. Furthermore, as also discussed above, petitioner's reliance on examples 5 and 6, section 1.183-2(c), Income Tax Regs., is not warranted because both of those examples are based on facts that are materially different from petitioner's case. Based on our review of the entire record in this case, we find that petitioner failed to prove that he was not negligent, or that he otherwise acted with reasonable cause and in good faith, in claiming deductions under section 162(a) for his non-Government activity during the years at issue. Therefore, we hold that petitioner is liable for the *77 addition to tax for negligence under section 6653(a)(1) on the entire underpayment of tax for 1988. [9] We further hold that petitioner is liable for the accuracy-related penalty for negligence under section 6662(a) on the portion of the underpayment for each of the years 1989 and 1990 that is attributable to his claiming deductions under section 162(a) for his non-Government activity. To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Indeed, petitioner testified: "It [petitioner's non-Government activity] was very intermittent and it would be difficult to average."↩
3. Petitioner has not argued that, and therefore we shall not consider whether, he is entitled to deductions for any of his claimed expenses under sec. 212 as ordinary and necessary expenses paid for the production or collection of income.↩
4. Petitioner appears to argue that the DOJ regulation allowed attorneys employed by DOJ to engage in the private practice of law for profit because it allowed such attorneys to provide pro bono services to the general public. We do not believe that a taxpayer could be engaged in an activity with the good faith objective of deriving a profit if the only services that person rendered in connection with that activity were provided without charge. Moreover, based on the instant record, we find that petitioner failed to prove that he provided any pro bono legal services during the years at issue.↩
5. For the years at issue, petitioner reported total income from his non-Government activity of approximately $ 720. Of that amount, approximately $ 400 was received during 1988 as reimbursements for expenses, $ 40 was received during 1989 as commissions from the sale of property, and $ 30 was received during 1990 from an unknown source which petitioner admitted on brief was not his father. Consequently, only approximately $ 250 of the total income reported by petitioner during the years at issue was received from his father, and all of that amount was received during 1989. Thus, petitioner did not even provide legal services to his father for compensation during two of the three years at issue.↩
6. Petitioner argues, and we recognize, that a taxpayer may be engaged in more than one activity for profit at the same time. See Purdy v. Commissioner, 12 T.C. 888, 892 (1949); example 4, sec. 1.183-2(c), Income Tax Regs.↩ However, petitioner has not demonstrated that he was engaged in two activities for profit during the years at issue.
7. In addition to determining that petitioner was not engaged in the private practice of law for profit during the years at issue, respondent determined, in the alternative, that petitioner failed to show that his claimed expenses for his non-Government activity were ordinary and necessary as required by sec. 162(a). On brief, respondent concedes that, if petitioner had been engaged in the private practice of law for profit during the years at issue, petitioner's State bar dues, subscription to the Supreme Court Reporter, and expenses related to the North Carolina and Federal Bar Association meetings would be ordinary and necessary. However, with respect to the remaining expenses, respondent maintains that petitioner failed to establish that those expenses were ordinary and necessary. Based on our review of the record, and assuming arguendo that petitioner had been engaged in the private practice of law for profit during the years at issue, we find that petitioner failed to prove that the expenses he claimed, other than the ones conceded by respondent, were ordinary and necessary expenses of his non-Government activity. Therefore, even if petitioner had engaged in the private practice of law for profit during the years at issue, we hold that, with the exception of the deductions for petitioner's State bar dues, subscription to the Supreme Court Reporter, and expenses related to the North Carolina and Federal Bar Association meetings that respondent conceded were ordinary and necessary, petitioner has not shown that he is entitled to deductions under sec. 162(a) for his claimed expenses from his non-Government activity for those years.↩
8. In addition to the underpayments attributable to petitioner's non-Government activity, respondent determined that petitioner had underpayments attributable to claimed deductions for a boarding house activity for 1988 through 1990 and to a claimed capital loss for 1990 and that petitioner is liable for the addition to tax for negligence for 1988 and the accuracy-related penalty for negligence for 1989 and 1990 for those underpayments. Prior to the trial herein, the parties settled the boarding house issue, and petitioner conceded the capital loss issue. On brief, respondent limited her discussion of the addition to tax for negligence and the accuracy-related penalty to the underpayments attributable to petitioner's non-Government activity. She does not mention the addition to tax or the accuracy-related penalty with respect to either the boarding house or capital loss issues. We therefore presume that she has abandoned her position that the portion of petitioner's underpayments for each year at issue that is attributable to the boarding house and capital loss issues was due to negligence or disregard of rules or regulations. See Rybak v. Commissioner, 91 T.C. 524, 566↩ n.19 (1988).
9. Although we found that respondent abandoned her position that the portion of petitioner's underpayment for each year at issue that is attributable to his boarding house activity was due to negligence, see supra↩ note 8, the addition to tax for negligence under sec. 6653(a) applies to the entire underpayment of tax for 1988 if any portion of that underpayment is attributable to negligence.